UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DANA LAMB, and ACCESS NOW, INC.,

                    Plaintiffs,

vs.                               Case No.  2:05-cv-93-FtM-33DNF

CHARLOTTE   COUNTY,   a   political
subdivision of the State of Florida,

                    Defendant.

_____/

## ORDER

    This matter comes before the Court pursuant to Plaintiffs' Motion for Summary Judgment (Doc. # 42), filed on February 27, 2006, and Defendant's Motion for Summary Judgment and to Dismiss for Lack of Subject Matter Jurisdiction (Doc. # 49), filed on March 1, 2006. Responses to both Plaintiffs' and Defendant's dispositive motions have been filed (Docs. # 58 and 59).

**I.**   **Standard of Review**

    **A.**   **Summary Judgement**

    Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material

fact will preclude a grant of summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996)(citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)).  A fact is material if it may affect the outcome of the suit under the governing law.  Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997).  The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffrey v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995)(citing Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor.  Shotz v. City of Plantation, Fla., 344 F.3d 1161,

2

1164 (11th Cir. 2003).  If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment.  Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988)(citing Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988)).  However, if non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981).

**B.   Motion to Dismiss under Rule 12(b)(1), Fed. R. Civ. P.**

Motions filed under Rule 12(b)(1), Fed. R. Civ. P., question this Court's jurisdiction over the subject matter of the case. Motions to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), Fed. R. Civ. P., may attack jurisdiction facially or factually.  Morrison v. Amway Corp., 323 F.3d 920, 924, n.5 (11th Cir. 2003).  Where the jurisdictional attack is based on the face of the pleadings, the court merely looks to determine whether the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in the plaintiff's complaint are taken as true for purposes of the motion.  Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990).

In factual attacks, on the other hand, the court delves into the arguments asserted by the parties and the credibility of the

3

evidence presented.  <u>Garcia v. Copenhaver, Bell, and Assocs.</u>, 104 F.3d 1256, 1260-1261 (11th Cir. 1997).   As stated in <u>Morrison</u>, "Factual attacks challenge subject matter jurisdiction in fact, irrespective of the pleadings. In resolving a factual attack, the district court may consider extrinsic evidence such as testimony and affidavits." 323 F.3d at 925.   In deciding a motion to dismiss filed under Rule 12(b)(1), Fed. R. Civ. P., this Court is not required to assume that the allegations in the complaint are true. <u>Rosenkrantz v. Markopoulos</u>, 254 F.Supp.2d 1250, 1251 (M.D. Fla. 2003); <u>see also</u> <u>Goodman v. Sipos</u>, 259 F.3d 1327, 1331 n.6 (11th Cir. 2001)(factually-based attacks on subject matter jurisdiction go beyond the pleadings and permit testimony and affidavits to be considered).

Plaintiffs bear of burden of demonstrating that the Court has jurisdiction in this case.  <u>Menchaca v. Chrysler Credit Corp.</u>, 613 F.2d 507, 511 (5th Cir. 1980).[1]  Once subject matter jurisdiction has been questioned, a plaintiff is required to "clearly allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." <u>Warth v. Seldin</u>, 422 U.S. 490, 518 (1975).

In addition, courts may dismiss cases pursuant to Federal Rule

---

[1] In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted all cases decided by the Fifth Circuit Court of Appeals prior to the close of business on September 30, 1981 as binding precedent.

of Civil Procedure 12(b)(1) upon finding that the plaintiff's claims are "clearly immaterial, made solely for the purpose of obtaining jurisdiction or are wholly unsubstantiated and frivolous." Lawrence, 919 F.2d at 1529 (quoting Eaton v. Dorchester Dev., Inc., 692 F.2d 727, 732 (11th Cir. 1982); see also Bell v. Hood, 327 U.S. 678, 682-683 (1946).

In this case, the Court will first address Defendant's motion to dismiss this case under Rule 12(b)(1), Fed. R. Civ. P., because Defendant has questioned this Court's jurisdiction over the subject of this case.  Courts have an affirmative duty to examine their jurisdiction in each case, and if the Court concludes that jurisdiction is absent, the Court must not proceed on the merits of the case.  As it would be improvident to examine the cross motions for summary judgment absent jurisdiction, the Court will evaluate Defendant's motion to dismiss, and then proceed with the cross motions for summary judgment only in the instance that jurisdiction is found to exist.

## II.  **Background**

Plaintiffs Dana Lamb, an individual who requires a wheelchair for mobility, and Access Now, Inc., a Florida not for profit corporation, filed their complaint against Defendant, Charlotte County, on March 4, 2005. (Doc. # 1).[2]  In the complaint, the

---

[2] The complaint contains the following description of Access Now, Inc.:

Plaintiffs allege that Defendant violated Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12131-12134 and its implementing regulation, 28 C.F.R. Part 35, as well as § 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 701 et seq. Plaintiffs allege that Defendant Charlotte County maintains a Library, a Community Center, and an Arts and Crafts Building, and that such facilities fail to comply with the ADA.

In December of 2004 or January of 2005, Plaintiff Lamb visited the Englewood-Charlotte Public Library, and the Tringali Recreation Center.[3]   The Tringali Recreation Center includes a Community

---

The Association's members consist of both qualified individuals with disabilities under and as defined by the ADA . . . and the able-bodied.  Access Now is engaged, inter alia, in seeking compliance with the ADA, educational efforts to correct violations when found, and when necessary and appropriate, litigation to require persons and entities in violation of the ADA to comply with the Act.  One of the primary purposes of the Association is to represent its members to assure that public spaces are accessible to and useable by its members, to assure its members that they will not be excluded from participation in or be denied the benefits of the services, programs or activities of public accommodations, and to assure its members that they will not be discriminated against because of their disabilities.

(Doc. # 1 at 2-3).

[3] According to Plaintiff Lamb's deposition, he cannot recall the exact date or month that he visited the properties:

Q.   When did you fist go to the Tringali Center?
A.   December or January of last year.
Q.   January, '05?
A.   Yes
Q.   Do you have a date?

Center and an Arts and Crafts Building.[4]   Plaintiffs allege that these facilities failed to comply with the ADA and contained "barriers to access" which denied Plaintiff Lamb the opportunity to enjoy "full, safe, and equal access to the programs, services, and facilities at the subject properties." (Doc. # 1 at 2).

Plaintiffs' complaint explains that Lamb "continues to desire to visit the facilities but continues to be denied full, safe, and equal [use] due to the barriers to access and violations of the ADA that continue to exist." (Doc. # 1 at 2).   Plaintiffs seek

A.   No.

(Doc. # 42-2 Pl.'s Dep. p. 19).

[4]Although Plaintiffs mention barriers to access at a gymnasium at or near the Tringali Recreation Center, Plaintiffs' complaint does not mention a gymnasium.  Plaintiffs' motion for summary judgment acknowledges that Plaintiffs' complaint does not address the gymnasium at the complex: "Plaintiffs' complaint set out with specificity numerous barriers to access at three of the four facilities at the Tringali Complex, but did not mention particular barriers to access at the Gymnasium with specificity in their Complaint." (Doc. # 42-1 at 1).   Plaintiff Lamb's deposition testimony is also consistent with the notion that Plaintiffs' complaint only covers the Library, the Community Center, and the Arts and Crafts Building. (Doc. # 42-2 Pl.'s Dep. p. 31). Defendant argues that Plaintiffs' case should not extend to the gymnasium, as such gymnasium was not mentioned in the complaint. Plaintiff asserts that the liberal standards for notice pleading under Federal Rule of Civil Procedure 8 allow Plaintiffs' claim with regard to the gymnasium.   This Court agrees with Defendant. Accordingly, the subject matter of this suit does not extend to the gymnasium.  Upon noticing that the complaint failed to address the gymnasium, Plaintiffs should have sought leave to amend the complaint.  Plaintiffs have failed to seek to cure the problem and have carried on as if the complaint were amended despite the fact that the complaint is devoid of assertions with regard to the gymnasium.  Accordingly, all requests for relief with regard to the gymnasium are **DENIED**.

injunctive relief and attorney's fees and costs. (Doc. # 1 at 1).

III. __Analysis__

Title II of the ADA prohibits discrimination in public services and transportation and states, "No qualified individual with a disability shall, by reason of such disability, be excluded from participation in, or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any public entity." 42 U.S.C. § 12132.

As stated in Shotz v. Cates, 256 F.3d 1077, 1079 (11th Cir. 2001):

> To state a claim under Title II of the ADA, a plaintiff must allege: (1) that he is a qualified individual with a disability; (2) that he was excluded from participation in or . . . denied the benefits of the services, programs, or activities of a public entity or otherwise discriminated against by such entity; (3) by reason of such disability.

(Internal citations omitted)

Defendant moves to dismiss Plaintiffs' case pursuant to Federal Rule of Civil Procedure 12(b)(1) on the ground that Plaintiffs lack standing to bring this case, thus depriving the Court of jurisdiction over this matter.

A. __Lamb's Standing__

In order to meet the requirements of Article III standing, a plaintiff must establish that he has suffered an injury in fact, that the injury was causally connected to the defendant's actions,

8

and that the injury would be redressed by a judgment in the plaintiff's favor.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992).  In addition, concerning standing to seek injunctive relief, Lujan states:

> Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing present adverse effects.  And the affiants' profession of an "intent" to return to the places that they had visited before--where they will presumably, this time, be deprived of the opportunity to observe animals of the endangered species --is simply not enough.  Such "some day" intentions-without any description of concrete plans, or indeed even any specification of *when* the some day will be --do not support a finding of the "actual or imminent" injury that our cases require.

504 U.S. at 564 (emphasis in original).

This proposition is also reflected in City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983)("exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.")(internal citation omitted).  The threat of future injury must be "real and immediate--as opposed to . . . merely conjectural or hypothetical." Wooden v. Bd. of Regents of Univ. Sys. of Geo., 247 F.3d 1262, 1284 (11th Cir. 2001).

Defendant alleges that Plaintiffs lack standing because there is no "case or controversy" as required by Article III of the Constitution, as explained in Lujan and other binding precedent, because Lamb, while seeking injunctive relief, has failed to credibly or sincerely allege that he will suffer a future injury.

9

In addition, according to Defendant, Lamb's statement that he plans to return to the facility lacks the degree of specificity required by <u>Lujan</u>.

Defendant argues that Plaintiffs' extensive litigation history[5] and bleak financial status belies Lamb's deposition testimony that he plans to return to Defendant's property.[6]  Lamb stated that he would like to see the Library's shark tooth exhibit again (Doc. # 42-2 Pl.'s Dep. pp. 45, 49); however, his deposition does not contain any statement of intent to return to the other facilities being sued in this case: the Community Center and the Arts and Crafts Building.  Lamb's deposition testimony also states that he has not been back to the Defendant's property since January 2005. ((Doc. # 42-2 Pl.'s Dep. p. 48).

Further, Plaintiff Lamb's deposition testimony contains the following commentary on Defendant's Englewood-Charlotte Public Library and Tringali Center:

> Q.    Okay. Good.  Have you traveled to the Englewood
>        area recently?
> A.    Not recently.
> Q.    When was the last time you were in the general area
>        of Englewood? Do you know?

---

[5] According to Defendant's motion, "Plaintiff Lamb has filed 117 similar suits in the United States District Court for the Middle District of Florida alone.  Plaintiff Access Now, Inc. has filed some 235 suits in this District, over 400 in the Southern District and over 840 nationwide. (Doc. # 50 at 2).

[6] Plaintiff receives Social Security disability checks and Plaintiff also testified that he receives some income from rental properties.  (Doc. # 42-2 Pl.'s Dep. p. 14).

```
A.   I couldn't tell you.
Q.   Would it have been, say, before February of last
     year? Before, say a year.   In the last year have
     you been there at all?
A.   Yes.
Q.   And doing what?
A.   I was going up to Tampa.
Q.   So you went through Englewood on the highway?
A.   Yes.
Q.   Okay.  Have you been to the Tringali Center in the
     last year?
A.   Not since I filed the case.
Q.   Is it true, in your opinion do you think it's true
     to say that the Tringali Center is in the boonies?
A.   That's pretty much - it's off a main road.
Q.   Okay.
A.   But it's - it's off a main road.  Some people might
     consider that.  But it's off a main road.  You
     don't have to go way back into a neighborhood or
     down a dirt road or anything.
Q.   Do you have relatives in the area of Englewood?
A.   No.
Q.   Or any family or friends?
A.   No.
Q.   Okay.  So isn't it true that you have been a
     Plaintiff in about 130 suits?
A.   I couldn't tell you.
Q.   How many suits have you filed, do you think?
A.   I wouldn't be, I don't count them.  It's -it's in
     my life.  I got some places I can't get around, I
     can't do things other people can do.  I know that I
     can have thousands and be, you know, what's the
     word I'm looking for--it would be legitimate.  But
     I only do ones that bother me, when I can't do
     something.
```

(Doc. # 42-2 Pl.'s Dep. pp. 11-12).

Plaintiff Lamb's deposition continues as follows:

```
Q.   Have you, since January '05, have you been there a
     second time?
A.   No.  That was my second time.
Q.   Okay.  When did you fist go?
A.   It wasn't long before that.  I went there probably
     within a two-week period.
. . . .
Q.   How did you know it [the Center] existed?
```

> A.   I was just driving down there, and I had been
>       driving for a while, and I saw the library and
>       stuff and I stopped, went in there and checked the
>       place out.
> Q.   Why were you traveling in the area?
> A.   I didn't have a reason.
>  . . . .
> Q.   So what brought you there a second time?
> A.   I was in that area.  I actually do a lot of driving
>       around.   I'm single, and I get fed up with
>       everything, I get in my van, take off.   I've
>       traveled all over the bottom, the south part of
>       Florida.   Second time I was going by and I stopped
>       to see the shark tooth exhibit again. . . . the
>       second time is when I encountered the bathroom
>       problem.
>  . . . .
> Q.   Is it true to say that your home in LaBelle is
>       about 75 miles away from Tringali Center?
> A.   If that's what you found out . . . Mapquest is
>       pretty close, yes.

(Doc. # 42-2 Pl.'s Dep. pp. 20-25).

Plaintiff's deposition testimony also reflects that there are several libraries that are closer to his home than Defendant's library.  (Doc. # 42-2 Pl.'s Dep. p. 25).

Defendant persuasively argues that Plaintiff Lamb lacks standing to sue Defendant because Lamb lacks the requisite concrete and specific intent to return to the properties as (1) Lamb lives approximately one hour and forty five minutes (75 miles) away from the property; (2) Lamb's contact with the property has been infrequent; (3) Lamb has not been back to the property since filing the complaint; (4) there are other libraries and similar facilities closer to Lamb's home, including a library located only seven miles from his home; (5) Lamb has no connection to the property and no

family or friends located near the property; (6) Lamb has no immediate or concrete plans to return to the property, only a non-specific "wish" to return if the property comes into compliance; (7) Lamb has filed many similar suits throughout a large geographic area; and (8) Lamb has evinced a desire to visit each of the many sites sued, despite the incredibility of such statements. (Doc. # 50 at 8).

Defendant relies upon several district court cases, including Brother v. Rossmore Tampa Limited Partnership, No. 8-03-cv-1253-24MAP, 2004 WL 3609350 (M.D. Fla. Aug. 19, 2004).  In Brother, a wheelchair-bound plaintiff sued the owner of a Tampa, Florida hotel under Title III of the Americans with Disabilities Act for defendant's alleged failure to remove structural barriers to access within the hotel.  The plaintiff was a resident of Miami, Florida and visited Tampa, Florida for a church event.  The court initially entered an order granting summary judgment in favor of the Defendant; however, upon reconsideration, the court determined that the case should have been dismissed for lack of subject matter jurisdiction.  The Court carefully examined the facts of the case and determined that the plaintiff lacked a specific intent to return to the defendant's property, a requirement for the relief sought.  Accordingly, the court vacated it order granting summary judgment for Defendant and dismissed the case for lack of subject matter jurisdiction.

Defendant also relies upon the case of <u>Lamb v. EID Management, LLC</u>, 2:02-cv-312-FtM-29DNF (M.D. Fla. July 8, 2003), in which the court granted a motion for summary judgment in favor of the defendant, a hotel owner, upon finding that the plaintiff, who visited the hotel only one time and had no specific intent to return to the hotel, lacked standing to sue under Title III of the ADA.

This Court agrees with Defendant's analysis, and follows the reasoning of the <u>Brother v. Rossmore</u> and <u>Lamb v. EID Management</u> cases cited above, as well as the following district court cases that have reached a similar result: <u>Brother v. Tiger Partner, LLC</u>, 331 F.Supp.2d 1368, 1373 (M.D. Fla. 2004) (granting summary judgment against the plaintiff in a Title III ADA case and noting, "because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges a real and immediate--as opposed to a merely conjectural or hypothetical-- threat of *future* injury" (citation omitted)); <u>Brother v. CPL Invest., Inc.</u>, 317 F.Supp.2d 1358, 1369 (S.D. Fla. 2004) (discussing the fact that the plaintiff had filed over fifty Title III lawsuits in holding that the plaintiff's stated intent to return to the hotel sued was not credible); <u>Rosenkrantz</u>, 254 F. Supp. 2d at 1253 (granting motion to dismiss Title III ADA case against hotel owner and finding "Plaintiff's future travel plans

14

are just 'someday' intentions and lack any description of concrete plans or anything more definite than that he will travel to the Tampa Bay area in the next year or two probably.  Plaintiff's 'future injury' is identical to the injury allege in <u>Lujan</u> and, therefore, Plaintiff has failed to establish standing to bring this suit."); <u>Rodriguez v. Investco, LLC</u>, 305 F. Supp. 2d 1278, 1285 (M.D. Fla. 2004)(dismissing ADA plaintiff's case upon finding that plaintiff did not have a credible intent to return to the defendant's property, but instead, that plaintiff was "merely a professional pawn in an ongoing scheme to bilk attorney's fees from the Defendant.").

As in the cases cited above, Plaintiff Lamb lacks standing to seek injunctive relief because the facts do not give rise to the inference that future unlawful discrimination will occur. <u>See</u> <u>Shotz v. Cates</u>, 256 F.3d 1077, 1081 (11th Cir. 2001). Plaintiff lives 75 miles from the property in question and has no connection to the property.  Plaintiff happened upon the property as he was aimlessly traveling the highways.  He has been to property only two times and has stated no specific and concrete plan to return.  Plaintiff has filed numerous lawsuits under Titles II and III of the ADA.  The Court finds that his allegations of intent to return to the property in question are not credible, and even if such intentions were credible, they lack the specificity required to maintain a suit for injunctive relief.

Accordingly, this case is dismissed as to Plaintiff Lamb.

**B.   Access Now Inc.'s Standing**

This Court must now discern whether Plaintiff Access Now, Inc., has standing to pursue its claim.

In order for an organization to have associational standing to bring a suit on behalf of its members, it must show that "(a) its members would otherwise have standing to sue in their own right; (b) the interests [the association] seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Hunt v. Wash. State Apple Adver. Comm., 432 U.S. 333, 343 (1977).   Further, to enjoy associational standing, an organization must allege an injury to at least one of its members.   Warth, 422 U.S. at 511.   Accordingly, an organization's failure to maintain a member who has standing to sue is fatal to that organization's standing if associational standing is the sole basis of the organization's standing. Nat'l Alliance for the Mentally Ill v. Bd. of County Comm'rs of St. John's County, 375, F.3d 1292, 1296 (11th Cir. 2004)("the right of an association to sue on behalf of its constituents does not relieve its of its obligation to show that one of its constituents otherwise had standing to sue.")(citation omitted).

Because this Court has determined that Plaintiff Lamb lacks standing to pursue his claim, and Access Now, Inc.'s standing is

16

predicated upon Lamb's standing in this case, this Court determines that Plaintiff Access Now, Inc. lacks standing to proceed.

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   Defendants' Motion to Dismiss this Case for Lack of Subject Matter Jurisdiction (Doc. # 49) is **GRANTED**.

(2)   The Clerk is directed to terminate all pending motions and deadlines and to close this case.

**DONE** and **ORDERED** in Chambers in Fort Myers, Florida, this <u>21st</u> day of April, 2006.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:

Counsel of Record

17